BARNES v. LONG ISLAND REAL ESTATE EXCH. & INV. CO. et al.

(Supreme Court, Appellate Division, Second Department.   November 25, 1903.)

1. MORTGAGES—ASSIGNMENT—RECORD—EFFECT AS NOTICE—SUBSEQUENT PAYMENT TO MORTGAGEE.

> Under the express provisions of Laws 1896, p. 616, c. 547, § 271, the recording of an assignment of a mortgage is not itself notice of such assignment to the mortgagor, so as to invalidate a payment to the mortgagee.

2. SAME—POSSESSION OF MORTGAGE.

> The fact that a bond and mortgage were not in the possession of the mortgagee at the time payments were made was not, of itself, notice to the mortgagor of their assignment.

3. SAME—ACTUAL NOTICE—EVIDENCE—SUFFICIENCY.

> Evidence of a statement, made informally by the president of an investment company at a dinner, that the company had assigned its mortgages, was not notice to a mortgagor of the assignment of his mortgages, when considered with statements made at the same time by the secretary of the company that the mortgagor could still pay him, and the fact that the company kept one of the mortgages, received payment, and executed a discharge therefor, and also received payments on the other mortgage until its payment in full.

4. SAME.

> Evidence that an assignee of a mortgage mailed a notice to the mortgagor of the assignment was insufficient to show notice to the mortgagor, where there was no evidence that the notice was ever actually sent out, nor that it ever reached the mortgagor, and it was in fact not mailed to his legal address, but to that of a friend.

5. SAME—ASSIGNMENT OF MORTGAGE—PAYMENT TO MORTGAGEE.

> A mortgagee, which stood by and permitted a mortgagor to pay in full to its secretary and financial officer, who had at least apparent authority to receive such payment, a mortgage which it had assigned, should answer for the money thus received, and discharge the mortgage.

Cross-Appeals from Special Term.

Action by Albert J. Barnes against the Long Island Real Estate Exchange & Investment Company and the People's Trust Company. From the judgment rendered, plaintiff and defendant People's Trust Company prosecute cross-appeals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

L. E. Warren, for appellant Barnes.

George W. Wingate, for appellant People's Trust Co.

Robert H. Wilson, for respondent.

WOODWARD, J.   The plaintiff in this action purchased certain real estate, consisting of six lots at Ridgewood Heights, on the 6th day of September, 1892, from the Long Island Real Estate Exchange & Investment Company, the price agreed upon being $4,400. The plaintiff was a steward employed upon the American Line of steamers, plying between the United States and England; and the officers of the investment company were Ignatz Martin, president; Sydney H. Carr, secretary; Meyer Hellman, treasurer (this office, it appears, being largely nominal); and C. K. Hoorning, a director, who, in the

¶ 1. See Mortgages, vol. 35, Cent. Dig. § 675.

absence of the president and secretary, acted for the company, he being the chairman of the finance committee. These were the financial officers of the company, and in the transaction out of which this controversy arises the plaintiff had his dealings with Mr. Carr, the secretary, to whom he paid $500 down, giving two purchase-money mortgages—one of $1,300, and the other for $2,600—taking a receipt for the money, signed by the investment company, by Carr as its secretary. This transaction is conceded to have been within the scope of Mr. Carr's authority as secretary and cashier of the investment company. On the following day, September 7, 1892, the investment company assigned the second mortgage, for $2,600, to the defendant the People's Trust Company, and on the 10th of September of the same year Barnes' deed and mortgages and this assignment were all recorded in Queens county. Barnes paid off the first mortgage, which had been retained by the investment company, on the 1st day of November, 1892, and the bond bears a memorandum acknowledging the receipt in full of the amount due, signed by the investment company, by "Sydney H. Carr, Sec'y"; the same being in the handwriting of Mr. Carr. On the 29th day of November, 1892, the investment company executed a satisfaction piece, discharging the first mortgage of record. Mr. Barnes, for a period of nearly five years, continued to make payments of interest and principal at the office of the investment company upon the second mortgage, with no intimation at any of such payments that the investment company was not the owner of the said second mortgage. He took receipts, written upon the blanks of the investment company, signed by Mr. Carr, or in his behalf, as secretary of the company; and finally, on the 28th day of September, 1897, the transaction came to an end by the payment of $500, with accrued interest and satisfaction fees, this being the amount remaining unpaid. At this time Mr. Carr wrote out and signed with the stamp of the investment company the following receipt:

"Ignatz Martin, Pres.                                    Sidney D. Carr, Sec'y.

"The Lond Island Real Estate Exchange & Investment Co.

"Telephone Call 47 Bushwick.   1155 Myrtle Avenue, near Broadway.

"Brooklyn, N. Y., ———, 189–.

"Received from Mr. Albert Barnes the sum of Five Hundred Dollars being the balance due on his mortgage to us on lots in Ridgewood Heights; also interest to Oct. 1st and satisfaction fees.

"Brooklyn, N. Y., Sept. 28, 1897.

"L. I. Real Estate Exchange & Investment Co.

"Sidney H. Carr, Sec'y."

Mr. Barnes was not given a satisfaction piece in this transaction, nor did he receive back the bond and mortgage, but this is not material to any question here presented, for there is no dispute that he has paid over the money; the only question being whether he has paid the same to the investment company, or whether the payments made to Mr. Carr, who is a defaulter, and whose present whereabouts are unknown, were made to him as the agent of the defendant the People's Trust Company. The action was brought upon the theory that, the plaintiff, having paid his money to the

investment company without notice of the assignment to the trust company, the former owed him the duty of discharging the second mortgage; and this theory is, no doubt, correct, if the plaintiff in fact had no notice which was intended to put him on inquiry. The learned court at Special Term has, however, found as a fact that the plaintiff had such notice; and it is also found, though the plaintiff declined to ask for an amendment to conform to such finding, that Mr. Carr received the money as the general agent of the trust company; and the complaint was dismissed upon the merits as to the investment company, and not upon the merits as to the trust company. The plaintiff appeals from the judgment of dismissal, and the defendant trust company appeals from so much of the judgment and decision as determines that it has received the amount of the mortgage through its general agent.

Under the provisions of the statutes of this state (1 Rev. St. [1st Ed.] p. 763, pt. 2, c. 3, § 41; Real Property Law, § 271 [Laws 1896, p. 616, c. 547]), the mere recording of an assignment of a mortgage is not to be deemed, in itself, notice of such assignment to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee (Van Keuren v. Corkins, 66 N. Y. 77, 80; Brewster v. Carnes, 103 N. Y. 556, 561, 9 N. E. 323); nor is the fact that the bond and mortgage were not in the possession of the investment company controlling, the latter having been the mortgagee (Van Keuren v. Corkins, 66 N. Y. 80, 81). The only evidence of any notice to the plaintiff from the investment company is the testimony of Mr. Martin, president of the corporation, that a few weeks subsequent to the original purchase by Mr. Barnes the latter invited the officers of the investment company, with others, to a dinner on board the ship of which he was the acting steward, and that while at this dinner the question came up about the real estate; and Mr. Barnes is said to have made an inquiry whether, if he should need more time, he would be able to secure an extension. To this it is alleged that Mr. Martin replied that they had assigned the mortgage to the People's Trust Company, that it was a corporation, and that, so long as the interest was paid, there need be no fear about the mortgage being called in. It is claimed that the plaintiff replied that he knew the investment company people, and would rather deal with them, and that Carr, who was in the presence of Mr. Martin and the plaintiff, replied:

"That is all right Mr. Barnes. You can go right on dealing with me. I am going to collect the interest for the People's Trust Company."

This conversation, which is denied by the plaintiff, is alleged to have taken place just after the first payment of $500, and the giving of the two mortgages; and the direct examination does not show that any particular mortgage was under discussion, or that anything was said to indicate to the plaintiff that one of the mortgages had been retained by the investment company, while the other had been assigned. Upon cross-examination, Mr. Martin says:

"He spoke to me about the mortgages; it will just fill the gap if he pays off part, and part on to it; and he wanted to know, after the mortgage was due, whether it could remain, if he had not it all paid off, or some words"

to that effect. I told him we assigned our mortgages to the People's Trust
Company, or we have assigned the mortgage to the People's Trust Company."

Asked, "Which did you say—that you did assign, or that you had
assigned?" the witness answered:

"I would not be so very precise about that, but I did say to him that we
assigned or will assign or did assign our mortgages."

That is, in a general conversation, if such conversation ever
took place, the president of the investment company told the plain-
tiff that they assigned their mortgages to the People's Trust Com-
pany, not that any particular · mortgage had been assigned; and
Mr. Carr, secretary of the investment company, told the plaintiff
that he could continue to do business with him, etc., thus giving
the plaintiff to understand that there would be no change in their
relations; and the president appears to have acquiesced in this.
Subsequently the plaintiff paid off his first mortgage to the invest-
ment company—paid this money to Mr. Carr, the secretary, al-
though, from the evidence, he had just as much reason to believe
this mortgage had been assigned as the second one—and he con-
tinued to make payments both of principal and of interest to Mr.
Carr, with the knowledge of the other officers of the investment
company, with no suggestion of any kind that he was not paying
an indebtedness due to the latter. This is supported by the receipts
given as secretary of the investment company, and particularly the
last one, given in 1897, where it is declared that the $500 payment
is "balance due on his mortgage to us," etc. In view of the vague
and uncertain character of the alleged notice, which nowhere dis-
closes any information in reference to this particular mortgage, and
the consistent attitude of the plaintiff, who insists that he never heard
of the People's Trust Company until after the disappearance of
Mr. Carr, when the trust company made a demand upon him for
interest upon the second mortgage, coupled with the fact that the
plaintiff paid to the investment company, subsequent to this alleged
notice, one of the mortgages, at which time there was no suggestion
of any change in relations, we are unable to discover evidence to
warrant the conclusion that he had any notice that either of his
mortgages had in fact been assigned, or that he had such information
as was intended to put him on inquiry. A mere general statement
that the investment company assigned its mortgages—and the evi-
dence really goes no further—is not notice to the plaintiff that one of
his mortgages has been assigned; and when he was permitted to
make payments discharging the first mortgage, which, so far as
the evidence goes, was upon the same footing as the second, we
are unable to discover evidence sufficient to support the conclusion
that he acted in bad faith in the matter, or that he did otherwise
than as a reasonably prudent man might have done under the same
circumstances. It is unquestionably the rule that a mortgagor may
continue to deal with a mortgagee in making payments until he has
received notice of the assignment of the mortgage, or notice of facts
sufficient to put him on inquiry as to the continuance of the mort-
gagee's title. When he has received notice of such facts, then it

becomes a question of good faith. If he has received notice of facts which would enable him, if he made the requisite inquiry, to ascertain the truth, then he is bound to make such inquiry; and if he omits to do so he is chargeable with bad faith, and is not protected in thereafter making payments to the mortgagee. Stoddard v. Gailor, 90 N. Y. 575, 579, and authorities there cited. But a mere general statement of the policy of the investment company, made informally at a dinner, did not give notice to the plaintiff that this particular mortgage had been assigned, nor place upon him the duty of making special inquiry, in view of the fact that the investment company did retain one of the mortgages, accepted its payment, and issued a discharge regular in all of its details; the transaction taking place with the same officer who had conducted all of the other negotiations. There was nothing in the transactions between the plaintiff and the investment company, reaching over a period of nearly five years, which would justify him in believing that there was any change in their relations—certainly not more than that the investment company was acting as agent for the trust company; and the plaintiff's attitude upon the trial, insisting, through his counsel and in his evidence, that the case proceed upon the theory adopted in the complaint, is persuasive evidence that he acted in good faith in paying the money to the original mortgagee, and that he had no suspicion that he was doing anything different. The plaintiff testifies that he never heard of this trust company until after Carr's disappearance, some four or five years after his last payment on the second mortgage, and his entire conduct is consistent with testimony. He was engaged in traveling the ocean. He was in this country only at intervals, and he made his payments to the only people with whom he had had any dealings in reference to this mortgage. He made his payments to the people to whom he gave the mortgage, at their office, and with the knowledge of all of its financial officers; and the only pretense of any notice to him is the testimony of the president, some 10 years after an alleged conversation at a dinner, in which it does not appear that anything was said about this particular mortgage, and the plaintiff denies having had any such conversation. It is conceded that the money was received and receipted for by Mr. Carr as secretary, and we do not see how the investment company can avoid responsibility for the acts of persons who are held out as acting for it in the receipt of moneys under the circumstances of this case.

There was some testimony to the effect that the trust company had sent a notice to an address in Brooklyn, supposed to have been the address of the plaintiff, informing him of the assignment; but the witness was wholly unable to say whether such a notice had been sent out to the plaintiff, and it does not appear that the address was the legal address of the plaintiff, but of a friend of his, and there is no evidence that any such notice ever reached the plaintiff. The learned court does not appear to have regarded this evidence as of importance, and the witness was only able to testify to a general impression that all of the names on the list of mortgages assigned by the investment company to the trust company were notified of

the change of ownership. When asked if the notices were inclosed in stamped envelopes, he was only able to say that they were passed through the usual channels; and, in view of the conduct and the testimony of the plaintiff, it is hardly possible to sustain a finding of notice upon this testimony.

Reaching the conclusion, as we do, that the evidence of notice to the plaintiff is not sufficient to justify the finding, and believing that, in equity and justice, the investment company, which, upon its own evidence, stood by and watched this plaintiff pay over his money upon mortgages which had been given to it, and which it at least assumed to represent, should be called upon to discharge this mortgage, we conclude that the judgment should be reversed. Whatever relations Mr. Carr may have borne to the trust company, they were unknown to the plaintiff, who knew Mr. Carr only as the secretary of the investment company; and, if the latter permitted its officer to use its corporate name and its position as mortgagee for the purpose of taking the plaintiff's money, it ought, in equity and good conscience, to answer for the money thus received in its name. This would seem to be an appropriate place for the application of the rule that, where one of two innocent persons must suffer from the act of a third person, he should sustain the loss who has enabled the third person to do the injury. Walsh v. Hartford Fire Ins. Co., 73 N. Y. 5, 10. The investment company placed it in the power of Mr. Carr, its secretary, to mislead the plaintiff, and to induce in him the belief that he could safely discharge the obligation which he had issued to that corporation. The authority of an agent is not only that conferred upon him by his commission, but also, as to third persons, that which he has held out as possession. Walsh v. Hartford Fire Ins. Co., supra. There can be no doubt that the investment company held out Mr. Carr as its financial officer and secretary, and when it made an assignment of the second mortgage it was bound in good faith to call the plaintiff's attention to the specific fact, not to tell him generally of a custom to assign mortgages, followed by conduct which was not calculated to impress him with the idea that there had been a change in relations. It is evident that Mr. Martin did not intend the conversation alleged as a notice. It was a mere afterthought, by way of defense, after the wrong had been consummated, and it ought not to be allowed to prevail in a court of equity.

The judgment appealed from should be reversed; costs to abide the final award of costs. All concur.